IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAMON SAPP,

    Petitioner,

v.

J. SOTO, Acting Warden,

    Respondent.

No. C 13-3008 YGR (PR)

**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS PETITION AS UNTIMELY; AND DENYING CERTIFICATE OF APPEALABILITY**

(Dkts. 12, 15)

## INTRODUCTION

Petitioner Ramon Sapp, an inmate at the California State Prison - Los Angeles County, filed a *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Before the Court is Respondent's motion to dismiss the instant petition as untimely under 28 U.S.C. § 2244(d) -- the statute of limitations set by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

Having considered all of the papers filed by the parties, the Court GRANTS Respondent's motion to dismiss the petition as untimely.

## BACKGROUND

On February 21, 2006, an Alameda County jury convicted Petitioner of attempted premeditated murder of a police officer, two counts of assault with a deadly weapon on a police officer, and one count of possession of a firearm by a felon, with enhancements. Dkt. 12-2 at 30, 34.[1] Petitioner was sentenced to forty-three years to life in prison with the possibility of parole. *Id.* at 34.

The conviction for the aforementioned charges stemmed from a February 27, 2002 incident during which several undercover officers from the San Francisco Police Department pursued Petitioner upon participating in a plan to apprehend him because he had been identified as one of the high ranking members of the Thomas Paine gang. *Id.* at 31. Petitioner was initially pursued by car, and the chase ended on 35th Avenue in Oakland. *Id.* at 31-32. Before Petitioner could be arrested, he pulled out a black semi-automatic pistol, fired shots at the officers, and a "gun battle" ensued

---

[1] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

between him and the officers -- multiple shots were fired. *Id.* at 32-33. The "gun battle" ended after Petitioner had sustained numerous gun shot wounds and his own gun appeared to jam. *Id.* at 33.

On July 31, 2007, the California Court of Appeal affirmed Petitioner's conviction in an unpublished decision. *Id.* at 30-44.

Thereafter, Petitioner sought review in the California Supreme Court, and the state supreme court denied review on October 10, 2007. *Id.* at 2-3.

On January 28, 2009,[2] Petitioner filed a petition for a writ of habeas corpus in the California Court of Appeal, which was denied the next day on January 29, 2009.[3] Dkt. 12-3 at 2.

On March 21, 2012, Petitioner filed a petition for a writ of habeas corpus in the United States Supreme Court. Dkt. 12-4 at 2. The Supreme Court denied the petition on April 16, 2012. *Id.*

Petitioner filed the present petition on June 28, 2013.[4] Dkt. 1.

On December 30, 2013, Respondent filed his motion to dismiss the petition for writ of habeas corpus as untimely. Dkt. 12. On March 5, 2014, Petitioner filed his opposition. Dkt. 14. On

---

[2] The record does not include a copy of the state habeas petition filed in the state appellate court; therefore, the Court is unable to determine Petitioner's constructive filing date, i.e., the date the petition was signed (in order to determine if the mailbox rule applies). According to the mailbox rule, a *pro se* federal or state habeas petition is deemed filed on the date it is delivered to prison authorities for mailing. *See Saffold v. Newland*, 250 F.3d 1262, 1268 (9th Cir. 2001), *vacated and remanded on other grounds*, *Carey v. Saffold*, 536 U.S. 214 (2002) (holding that a federal or state habeas petition is deemed filed on the date the prisoner submits it to prison authorities for filing, rather than on the date it is received by the court). However, because the Court is unable to determine the date Petitioner signed his state habeas petition, it deems the petition was filed on the actual date of filing in the state appellate court -- January 28, 2009.

[3] The record does not indicate whether Petitioner pursued collateral review in the state superior or supreme courts.

[4] In the instant action, Petitioner filed a copy of the petition for a writ of habeas corpus he had filed in the United States Supreme Court, which had a signature line dated December 14, 2011. Dkt. 1 at 28. However, the mailbox rule does *not* apply here because December 14, 2011 could not have been the earliest date that the petition could have been delivered to prison authorities for mailing -- especially because the petition's actual filing date is more than two years later, in 2013. For the purposes of this discussion, the Court deems that the petition was filed on the actual filing date -- June 28, 2013.

2

March 19, 2014, Respondent filed his reply to the opposition. Dkt. 16.

Petitioner has also filed a renewed request for appointment of counsel and for an evidentiary hearing. Dkt. 15.

## DISCUSSION

AEDPA, which became law on April 24, 1996, imposed a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners. Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest date on which: (1) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1).

The one-year period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). AEDPA's one-year time limit, however, did not begin to run against any state prisoner before the date of the Act's enactment. *Calderon v. United States District Court (Beeler)*, 128 F.3d 1283, 1287 (9th Cir. 1997) (allowing § 2244(d)'s limitations period to commence before AEDPA's enactment would have an impermissible retroactive effect), *overruled in part on other grounds by Calderon v. United States District Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998) (en banc).

A state prisoner with a conviction finalized after April 24, 1996, such as Petitioner, ordinarily must file his federal habeas petition within one year of the date his process of direct review came to an end. *See id.* "Direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). Accordingly, if a petitioner fails to seek a writ of certiorari from the United States Supreme Court, AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by

3

Supreme Court Rule 13 expires. *See Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002) (where petitioner did not file petition for certiorari, his conviction became final ninety days after the California Supreme Court denied review); *Bowen*, 188 F.3d at 1159 (same).

In the present case, the limitations period started running on January 8, 2008 -- when Petitioner's sentence became final ninety days after the California Supreme Court denied review on October 10, 2007. *See id.* Thus, Petitioner had one year from the time the limitations period started running -- or until January 8, 2009 -- to file his federal habeas petition, absent tolling. Petitioner did not file the present petition until June 28, 2013 -- more than four years after the limitations period had expired. The petition is therefore untimely *unless* Petitioner can show that he is entitled to tolling.

## I.     Statutory Tolling

The petition may nonetheless be timely if the limitations period was tolled under 28 U.S.C. § 2244(d)(2) for a substantial period of time. AEDPA's one-year limitations period is tolled under § 2244(d)(2) for the "'time during which a properly filed application for State post-conviction or other collateral review [with respect to the pertinent judgment or claim] is pending.'" *Dictado v. Ducharme*, 244 F.3d 724, 726 (9th Cir. 2001) (quoting 28 U.S.C. § 2244 (d)(2)), *abrogated on other grounds by Pace v. DiGuglielmo,* 544 U.S. 408 (2005).

As explained above, Petitioner filed a state habeas petition in the state appellate court on January 28, 2009 -- twenty days after the limitations period had expired on January 8, 2009. A state habeas petition filed *before* the limitations period begins to run tolls the limitation period. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001). However, an application for state post-conviction or other collateral review filed *after* the limitations period has ended cannot toll the limitations period. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (Section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed, even if the state petition was timely filed). Section 2244(d)(2) cannot "revive" the limitations period once it has run (i.e., restart the clock to zero); it can only serve to pause a clock that has not yet fully run. *See Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998) (once the limitations period has

4

expired, collateral petitions can no longer serve to avoid the statute of limitations). Therefore, Petitioner is not entitled to statutory tolling under 28 U.S.C. § 2244(d)(2) because the limitations period had already run on January 8, 2009. In any event, even if Petitioner's state appellate habeas petition tolled the statute of limitations, it would have only been tolled for one day as the decision was issued the next day, January 29, 2009. The limitations period would have then started running again, and Petitioner did not file anything until his habeas petition in the United States Supreme Court three years later in March 2012. That 2012 filing in the Supreme Court would not have been able to toll the limitations period as it would have already expired in 2009. *See Ferguson*, 321 F.3d at 823. Accordingly, statutory tolling is not sufficient to overcome the time bar to Petitioner's federal habeas petition.

Because Petitioner did not meet the one-year requirement for filing the instant federal habeas petition, and he is not entitled to statutory tolling, his petition is barred as untimely under 28 U.S.C. § 2244(d)(1), unless he can show that he is entitled to equitable tolling of the limitations period.

**II.      Equitable Tolling**

The Supreme Court has determined that AEDPA's statute of limitations is subject to equitable tolling in appropriate cases. *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). Equitable tolling will not be available in most cases because extensions of time should be granted only if "'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Beeler*, 128 F.3d at 1288. The prisoner must show that "the 'extraordinary circumstances' were the cause of his untimeliness." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (citations omitted). Another statement of the standard is that a litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," preventing timely filing. *Holland*, 130 S. Ct. at 2562 (quoting *Pace*, 544 U.S. at 418); *accord Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006).

5

The Ninth Circuit has said that the petitioner "bears the burden of showing that this extraordinary exclusion should apply to him." *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002). Indeed, "'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" *Id.* at 1066 (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)).

Petitioner does not state in his opposition to the motion to dismiss that he is entitled to equitable tolling. The Court finds that it would be futile to provide him leave to amend to allege equitable tolling. Petitioner alleges no facts from which the Court could infer that his failure to raise his claims prior to the expiration of the limitations period was because of circumstances which were beyond his control and which made it impossible to file a timely federal petition. It was Petitioner's delay in pursuing his state court remedies and in filing his federal petition, rather than extraordinary circumstances, that led him to exceed the limitations period. *See Miranda*, 292 F.3d at 1065. The limitations period will not be equitably tolled.

### III. Actual Innocence Exception

In his opposition, Petitioner does not challenge Respondent's argument that the instant petition is untimely. Instead, Petitioner claims that he is "actually innocent" and is therefore entitled to review of his petition under the actual innocence exception. Dkt. 14 at 1-3.

Claims which challenge the constitutionality of the length of a sentence are subject to review at any time under the standard of review which allows a federal court to hear the merits of successive, abusive or procedurally defaulted claims if the failure to hear the claims would constitute a miscarriage of justice. *See Sawyer v. Whitley*, 505 U.S. 333, 330-40 (1992). Under the traditional understanding of habeas corpus, a "miscarriage of justice" occurs whenever a conviction or sentence is secured in violation of a constitutional right. *See Smith v. Murray*, 477 U.S. 527, 543-44 (1986). However, the Supreme Court limits the "miscarriage of justice" exception to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see, e.g., Wildman v. Johnson*, 261 F.3d 832, 842-43 (9th Cir. 2001) (petitioner must establish factual innocence in order to show that a

fundamental miscarriage of justice would result from application of procedural default). Under this exception, a petitioner may establish a procedural "gateway" permitting review of claims which otherwise would be barred from federal review if he demonstrates "actual innocence." *Schlup*, 513 U.S. at 316 & n.32.

A credible showing of "actual innocence" under *Schlup*, excuses the statute of limitations period established by AEDPA. *Lee v. Lampert*, 653 F.3d 929, 931 (9th Cir. 2011). Under this "equitable exception," a petitioner "may pass through the *Schlup* gateway and have his otherwise time-barred claims heard on the merits." *Id.* In order to pass through the *Schlup* gateway, a petitioner must produce sufficient proof of his actual innocence to bring him "within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup*, 513 U.S. at 315 (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). The evidence of innocence must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 316. A petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. *Id.* at 327. This exacting standard "permits review only in the 'extraordinary' case," but it "does not require absolute certainty about the petitioner's guilt or innocence." *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327).

A petitioner must support his claims "with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. "By enumerating [these] categories of evidence that could prove innocence, the Supreme Court made clear that less reliable kinds of evidence cannot support an actual innocence claim." *Lee*, 653 F.3d at 945-46 (Kozinski, J. concurring). A reviewing habeas court then "consider[s] all the evidence, old and new, incriminating and exculpatory," admissible at trial or not. *House*, 547 U.S. at 538 (internal quotation marks removed). On this complete record, the court makes a "probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* (quoting *Schlup*, 513 U.S. at 329). The court is to "assess how reasonable jurors would react to the overall, newly supplemented record." *Id.* In sum, a petitioner

7

must show that it is more likely than not that "no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327.  Stated another way, a petitioner must "persuade [a reviewing court] that every juror would have voted to acquit him."  *Lee*, 653 F.3d at 946 (citing *Schlup*, 513 U.S. at 327) (Kozinski, J. concurring).

     Here, Petitioner's conclusory statement that he is "actually innocent" falls far short of establishing that the exception applies to him.  Moreover, the nature of Petitioner's actual innocence claim is not clear because neither identity nor his actions on February 27, 2002 are at issue.  The evidence presented at trial was that Petitioner was arrested at the scene after being injured with several gun shot wounds stemming from a "gun battle" he had with police officers.  Dkt. 12-2 at 31-33.  As mentioned above, the actual innocence exception applies only if Petitioner presents evidence which creates a colorable claim of actual innocence, that is, that Petitioner is *factually innocent* of the charge for which he is incarcerated as opposed to legally innocent as a result of legal error.  *See Schlup*, 513 U.S. at 321; *see also Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (actual innocence means factual innocence, not merely legal insufficiency).  Petitioner's conclusory claim that he is "actually innocent" is unsupported.  For example, Petitioner does not support his claim "with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence . . . ."  *Schlup*, 513 U.S. at 324.  There is no new evidence in his petition or opposition to the instant motion to dismiss.  In fact, his handwritten opposition is only four pages long, and the only relevant argument he makes relating to actual innocence is as follows: "Petitioner contends that [the] petition was filed as 'actual innocence' and amended later as 'factual/actual innocence' and 'evidence in truth of fact.'"  Dkt. 14 at 1-2.  He claims to attach "Exhibit A" for support; however, these two documents, entitled "Plea for Relief by Actual Innocence" and "Amendment to Plea for Relief by Factual/Actual Innocence, and Evidence In Truth and Fact" contain only one-page and two-pages of arguments, respectively.  *Id.* at 6-8.  They each contain more conclusory statements.  For example, in his two-page "Amendment to Plea for Relief by Factual/Actual Innocence, and Evidence In Truth and Fact," Petitioner states as follows:

> [Petitioner] amends [his] plea of actual innocence with truth of fact declaring "factual innocence" and clear misuse of power, demonstrated in the form of

8

> vindictive prosecution by state and federal prosecutors in collusion with law enforcement recorded on record. The law states in clear print that due process is an equal right and the truth is made fact. It is the court['s] duty to will its judicial power to correct all wrong to its discretion and to not do so is a crime in itself.

*Id.* at 7-8. The Court notes that Petitioner had filed these same two documents with numerous exhibits in the instant case. Dkts. 4, 6. However, he does not explain how any of these exhibits support his actual innocent claim. Petitioner *does* indicates in both documents that he has attached "lower court arguments" in the form of his habeas petition to the United States Supreme Court. Dkts. 4 at 5-33; 6 at 9-38. It thus appears that Petitioner is alleging that he is innocent because his constitutional rights were violated, specifically the same violations that he alleged in the instant petition. Petitioner refers mainly to his underlying substantive claims of error, and not to his *factual* innocence. As stressed above, the Supreme Court has explained in this context, however, "'actual innocence' means factual innocence, not merely legal insufficiency." *See Bousley*, 523 U.S. at 623. Petitioner's claim that he is "innocent" because his rights were violated is one of legal error or insufficiency, not factual innocence. Also, as mentioned above, Petitioner has not introduced new evidence or pleaded facts to give this Court confidence in his innocence. He thus fails even to make a prima facie showing that given new evidence, and based on such new evidence, every juror would have voted to acquit him. *See Schlup*, 513 U.S. at 324; *Lee*, 653 F.3d at 946 (Kozinski, J., concurring). Accordingly, Petitioner is not entitled to review of his petition under the actual innocence exception.

In sum, Petitioner's federal habeas petition is untimely, and he has not offered the Court a sufficient reason why he should be entitled to statutory or equitable tolling. Moreover, as explained above, Petitioner's conclusory claim of "actual innocence" does not excuse his untimeliness. Accordingly, the Court GRANTS Respondent's motion to dismiss.

**IV.   Certificate of Appealability**

The federal rules governing habeas cases brought by state prisoners have been amended to require a district court that dismisses or denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

For the reasons stated above, Petitioner has not shown "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED.

## CONCLUSION

For the reasons outlined above, the Court orders as follows:

1. Respondent's motion to dismiss petition for writ of habeas corpus (dkt. 12) is GRANTED, and this action is DISMISSED with prejudice.

2. A certificate of appealability is DENIED. Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

3. The Clerk of the Court shall enter judgment, terminate as moot all pending motions, including Petitioner's renewed request for appointment of counsel and for an evidentiary hearing (dkt. 15), and close the file.

4. This Order terminates Docket Nos. 12 and 15.

IT IS SO ORDERED.

DATED: September 24, 2014

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**